ROSEMARY S. POOLER, Circuit Judge,
concurring:
I am pleased to concur in the concise and thorough opinion of this Court. I write separately for the sole purpose of emphasizing the narrowness of this Court’s disposition with respect to the implications of Kiobel v. Royal Dutch Petroleum Co., — U.S. -, 133 S.Ct. 1659, 185 L.Ed.2d 671 (2013), for claims brought under the Alien Tort Statute, 28 U.S.C. § 1350 (the “ATS”). This narrowness is tied to considerations regarding which claims do not “touch and concern the territory of the United States,” Kiobel, 133 S.Ct. at 1669, and conclusions which are driven by the facts and arguments made in the case before us on appeal.
I. KIOBEL
As our opinion describes, we have held in abeyance decision on this appeal since the case was argued on February 15, 2011. Maj. Op. at [47-48]. Our resolution of this appeal was held in abeyance pending the resolution of the question of “whether the law of nations recognizes corporate liability.” Maj Op. at [48] (citing Kiobel, 133 S.Ct. at 1663).[1] After oral argument on these questions, the Supreme Court ordered reargument on a third question: “ ‘[w]hether and under what circumstances the [ATS] allows courts to recognize a cause of action for violations of the law of nations occurring within the territory of a sovereign other than the United States.’ ” Maj Op. at [48] (quoting Kiobel v. Royal Dutch Petroleum Co., — U.S.-, 132 S.Ct. 1738, 182 L.Ed.2d 270 (2012)).
The Supreme Court did not explicitly answer the questions posed in the first petition for certiorari which caused us to hold resolution of this appeal in abeyance.[2] Rather, it affirmed the decision of this Court by requiring reargument on, and then answering, the third question above, a question the Supreme Court put before the parties of its own accord. In affirming, *56 the Supreme Court reasoned that, as a matter of statutory interpretation, the “principles underlying the presumption against extraterritoriality ... constrain courts exercising their power under the ATS.” Kiobel, 133 S.Ct. at 1665. But as to the question of “whether” the ATS allows courts to recognize a cause of action for violations of the law of nations occurring within the territory of a sovereign other than the United States, the answer was an unequivocal “Yes.” Concluding as much is required by the manner in which the Supreme Court answered the question of the “circumstances” under which courts might recognize such a cause of action, reasoning as follows: “[W]here the claims [under the ATS] touch and concern the territory of the United States, they must do so with sufficient force to displace the presumption against extraterritorial application.” Kio-bel, 133 S.Ct. at 1669.[3] Reasoning that “[o]n [the] facts [in Kiobel ], all the relevant conduct took place outside the United States,” and further reasoning “that mere corporate presence [of a defendant]” would also not “suffice[]” to displace the presumption against extraterritorial application of a United States statute, specifically the ATS, the Supreme Court affirmed our dismissal of plaintiffs’ claims in Kiobel.
The affirmance was unanimous, although it drew three concurrences. Justice Alito, joined by Justice Thomas, concurred “in the judgment and joinfed] the opinion of the Court as far as it goes.” Id. at 1669 (Alito, J., concurring). Specifically, Justice Alito noted that the question of whether claims “touch and concern the territory of the United States” was a “formulation [that] obviously leaves much unanswered.” Id. Justice Alito would have gone farther, however, and concluded that “a putative ATS cause of action will fall within the scope of the presumption against extraterritoriality ... unless the domestic conduct is sufficient to violate an international law norm that satisfies Sosa’s requirements of definiteness and acceptance among civilized nations.” Id. at 1670. Justice Alito characterized this as a “broader standard.” Id.
Justice Breyer, joined by Justices Ginsburg, Sotomayor, and Kagan, concurred in the judgment only. Justice Breyer would have reached the disposition of the majority not by invoking the presumption against extraterritoriality, but rather by invoking the “principles and practices of foreign relations law.” Id. at 1670 (Breyer, J., concurring). As such, Justice Breyer would have concluded that a federal court could find jurisdiction under the ATS under three circumstances: “(1) the alleged tort occurs on American soil, (2) the defendant is an American national, or (3) the defendant’s conduct substantially and adversely affects an important American national interest_” Id. at 1671. Because *57 none of the three conditions were satisfied in Kiobel, Justice Breyer would have affirmed our dismissal of the plaintiffs’ claims in Kiobel. Justice Kennedy, writing for himself, concurred in the Court’s opinion. His concurrence, in full, is as follows:
The opinion for the Court is careful to leave open a number of significant questions regarding the reach and interpretation of the Alien Tort Statute. In my view that is the proper disposition. Many serious concerns with respect to human rights abuses committed abroad have already been addressed by Congress in statutes such as the Torture Victims Protection Act of 1991 (TVPA), 106 Stat. 73, note following 28 U.S.C. § 1350, and that class of cases will be determined in the future according to the detailed statutory scheme Congress has enacted. Other cases may arise with allegations of serious violations of international law principles protecting persons, cases covered neither by the TVPA nor by the reasoning and holding of today’s case; and in those disputes the proper implementation of the presumption against extraterritorial application may require some further elaboration and explanation.
Id. at 1669 (Kennedy, J., concurring).
II. CHOWDHURY’S CLAIMS
Drawing from the principles and reasoning of the Supreme Court in Kiobel, I am convinced that this is not a case covered “neither by the TVPA nor by the reasoning and holding of’ Kiobel, and thus is not a case in which “the proper implementation of the presumption against extraterritorial application [ ] require[s] some further elaboration....” Id. at 1669 (Kennedy, J., concurring). This is true for several reasons.
First, as our opinion makes clear, in this case the plaintiff has a clear avenue of relief available to him in the form of the TVPA. Maj. Op. at [49-54]. Having pursued this avenue for relief for conduct outside of the United States, Chowdhury has vindicated the interests which we first identified in the ATS, namely, to hold accountable a torturer, who “has become like the pirate and slave trader before him hostis humani generis, an enemy of all mankind.” Filartiga v. Pena-Irala, 630 F.2d 876, 890 (2d Cir.1980).
Second, our opinion draws on one set of questions explicitly identified by the majority in Kiobel to determine whether a claim sufficiently touches and concerns the United States, by focusing on the conduct of defendants in this case.[4] We therefore explain that “ ‘all the relevant conduct’ set forth in plaintiffs complaint occurred in Bangladesh.” Maj. Op. at [49] (quoting Kiobel, 133 S.Ct. at 1669). Further still the complaint alleges not just that all relevant conduct, but that all conduct claimed in this case, occurred in Bangladesh. Finally, there was no evidence adduced at trial to indicate any conduct relevant to Chowdhury’s ATS claim took place in the United States.
Chowdhury does not seriously contest this factual matter on appeal. Haphazardly, he avails, “[Khan] maintained his residence and business in the United States while directing the acts of torture to be *58 carried out in Bangladesh. He may well have directed some of those acts from his U.S. residence.” PI. Letter Br. at 7, May 10, 2013. Chowdhury points to no eviden-tiary basis to support this claim. In point of fact, trial testimony from Chowdhury’s own mother and father supported the conclusion that Khan was in Bangladesh at the time of Chowdhury’s torture. And Khan himself testified, at the time of trial in 2009, that though he had a residence in the United States, he had been living in Bangladesh for four years prior, including during 2007, when the RAB engaged in acts of torture at Khan’s instigation. ■ And of course there is no dispute that Chow-dhury’s torture occurred entirely within Bangladeshi holding facilities, at the hands of the RAB, a Bangladeshi force. Thus, the fact that all conduct (both relevant to the ATS claim and otherwise) took place outside the United States renders our case firmly on point with the facts and holding of Kiobel.
Third, the distinctions recognized in our opinion today, and which were recognized in Kiobel as well, go to the crux of the presumption against extraterritoriality. As the Supreme Court noted in Morrison v. National Australia Bank Ltd., the mere relevance of the “presumption ... is not self-evidently dispositive, but its application requires further analysis.” 561 U.S. 247, 130 S.Ct. 2869, 2884, 177 L.Ed.2d 535 (2010). In Morrison, further analysis required the Court to examine the “focus” of the Securities Exchange Act, and led to the conclusion that the Act would cover situations where “the purchase or sale [of a covered security] is made in the United States, or involves a security listed on a domestic exchange.” Id. at 2886. The analogous analytical work of the Supreme Court in Kiobel led it to adopt a rule under the ATS which was “careful to leave open a number of significant questions regarding [its] reach and interpretation.” Kiobel, 133 S.Ct. at 1669 (Kennedy, J., concurring). These questions require courts to answer, at least, whether the claims “touch and concern the territory of the United States.” Id. at 1669. Because the record establishes that the claims alleged in this case involve conduct that took place entirely in Bangladesh, I am convinced that we need not elaborate on what facts, if alleged or proved, might lead us to conclude that claims touch and concern the United States. The elaboration of such “significant questions,” id. at 1669 (Kennedy, J., concurring), is properly left to a further panel of this Court.
With these considerations in mind, I concur.

. The petition for certiorari that was granted also included the question of whether corporate liability under the ATS was a question of subject matter jurisdiction, or a merits issue. See Brief for Petitioner at Kiobel v. Royal Dutch Petroleum Co., 133 S.Ct. 1659 (2013) (No. 10-1491), 2011 WL 2326721 at *i.

. At least one sister circuit has determined that, by not passing on the question of corporate liability and by making reference to "mere corporate presence” in its opinion, the Supreme Court established definitively the possibility of corporate liability under the ATS. Doe I v. Nestle USA, Inc., 738 F.3d 1048, 1049 (9th Cir.2013) (citing Kiobel, 133 S.Ct. at 1669). The relevance of the Supreme Court's reference to corporate presence for the disposition of this case need not be explored here, because as the majority opinion notes, and as I agree, "all of the relevant conduct” took place in Bangladesh. Maj. Op. at [49]. As such, the assertion that Kiobel "did not disturb the precedent of this Circuit” with respect to corporate liability, Maj. Op. at [49 n. 6], is not pertinent to our decision, and thus is dicta.

. I note that some of the district courts to have considered the issue have apparently split on the import of this language. Compare, e.g., Sexual Minorities Uganda v. Lively, 960 F.Supp.2d 304, 324, 2013 WL 4130756, at *15 (D.Mass. Aug. 14, 2013) ("Given that Defendant is a United States citizen living in this country and that the claims against him 'touch and concern the territory of the United States ... with sufficient force to displace the presumption against extraterritoriality,’ a cause of action is appropriate under the ATS.” (quoting Kiobel, 133 S.Ct. at 1669)), with Al Shimari v. CACI Intern., Inc., 951 F.Supp.2d 857, 867 (E.D.Va.2013) (noting that “Plaintiffs’ reading of Kiobel [supporting extraterritorial application of the ATS in some circumstances] is a fair one,” because Kio-bel's " 'touch and concern’ language is textually curious, and may be interpreted by some as leaving the proverbial door ajar,” but nonetheless dismissing plaintiffs’ claims). At this writing, one of our sister circuits has seen fit to vacate its prior rule on the question of extraterritoriality and remand to the district court for further consideration of the issue. Doe v. Exxon Mobil Corp., 527 F. App’x 7 (D.C.Cir.2013).

. We have no cause in this case to focus on the nationality of the defendant, as he is a Bangladeshi citizen. The Kiobel Court at least implied that nationality could be relevant for determining whether a claim brought under the ATS would "touch and concern” the territory of the United States, as the Kio-bel Court determined that “it would reach too far” for “mere corporate presence” to suffice to make out a claim under the circumstances in Kiobel. 133 S.Ct. at 1669.